Scott E. Randolph (ISB #6768)
A. Dean Bennett (ISB #7735)
HOLLAND & HART LLP
101 South Capitol Boulevard, Suite 1400
P.O. Box 2527
Boise, Idaho  83701-2527
Telephone:   (208) 342-5000
Facsimile:    (208) 343-8869
Email: serandolph@hollandhart.com
           adbennett@hollandhart.com

Mark A. Miller (UT Bar No. 9563) *(pro hac vice pending)*
Ginger Utley (UT Bar No. 11766) *(pro hac vice pending)*
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, Utah  84101
Telephone:  (801) 799-5800
Facsimile:  (801) 799-5700
Email: mmiller@hollandhart.com
           gutley@hollandhart.com

Attorneys for Plaintiff
BATTELLE ENERGY ALLIANCE, LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| BATTELLE ENERGY ALLIANCE, LLC, a Delaware limited liability company,<br><br>                          Plaintiff,<br><br>vs.<br><br>SOUTHFORK SECURITY, INC., an Idaho corporation, COREY THUEN, an individual, and DOES 1 through 10, inclusive,<br><br>                          Defendants. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, Battelle Energy Alliance, LLC ("BEA"), complains and alleges as follows:

## PARTIES

1. Plaintiff, Battelle Energy Alliance, LLC ("BEA" or "Plaintiff"), is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Idaho Falls, Idaho.

2. Defendant, Mr. Corey Thuen ("Thuen"), is an individual who is a citizen or permanent resident of the United States and a citizen of the State of Idaho, who is domiciled in the State of Idaho located at 1522 Newman Drive, Idaho Falls.  Thuen was, until recently, an employee of BEA.

3. Defendant, Southfork Security, Inc. ("Southfork"), is a corporation organized under the laws of the State of Idaho, with its principal place of business in the city of Idaho Falls, Idaho.  Upon information and belief, Southfork was formed and organized by Thuen and Thuen is its sole owner and director.  Upon information and belief, Southfork acts as alter ego for Thuen.

4. Southfork and Thuen are collectively referred to as "Defendants."

5. BEA is informed and believes, and on that basis alleges, that Defendants are responsible for each of their acts and for their conduct, which are the true legal causes for the damages herein alleged.

## DOE ALLEGATIONS

6. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 10, inclusive, are unknown to BEA at this time, and BEA, therefore, sues said Defendants by such fictitious names.  BEA will ask leave of Court to amend this Complaint when the same shall have been ascertained.  BEA is informed and believes, and thereon alleges, that each DOE Defendant is responsible intentionally, or in some other actionable manner, for the events and happenings referred to herein, which proximately caused injury and damage to BEA, as hereinafter alleged.

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

7. Any reference to Defendants shall refer to all defendants herein: each named Defendant, each DOE Defendant, and all DOE Defendants.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this action pursuant to 17 U.S.C. § 301, and 28 U.S.C. §§ 1331 and 1338(a), in that this Complaint raises federal questions under the Federal Copyright Law, 17 U.S.C. § 101, *et seq*. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9. The Court has personal jurisdiction over Defendants because they have purposefully engaged in copyright infringement, unfair business practices, tortious interference, *et al.*, using works owned by BEA in Idaho, and Defendants committed tortious acts and conduct in breach of contract in Idaho, knew or should have known that their activities were directed towards Idaho, and that the effect of those activities would be felt in Idaho.

10. The Court also has personal jurisdiction over Defendants because they have engaged in business activities in and directed to Idaho, and they have committed tortious acts within the State. Additionally, Defendants maintain their principal place of business in Idaho and are domiciled in Idaho.

11. The Court also has personal jurisdiction over Defendants because they have purposefully availed themselves of the opportunity to conduct commercial activities in this forum. The Complaint arises out of those commercial activities.

12. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) in that substantial injury occurred and continues to occur in this district, a substantial portion of the events that are the subject of this action took place in this district, Defendants are domiciled in this district, and the Defendants are subject to personal jurisdiction in this district.

## AGENCY

13. At all times herein mentioned, each Defendant was the agent, servant, joint venturer, partner, or employee of the other Defendants, successor corporations, successors in interest, or entities and, in doing the things herein alleged, was acting within the purpose and

COMPLAINT AND DEMAND FOR JURY TRIAL - 2

scope of said agency or employment at the time of the incident. The Defendants were acting within the scope and course of that agency and employment and with the knowledge and implied and/or express consent and permission of the other Defendants.

## INTRODUCTION

14. This is a case of a copyright infringement and violations of federal and state laws. Defendants have intentionally duplicated BEA's valuable copyrighted and trade secret software and have adopted and used that software in blatant disregard of BEA's intellectual property rights. Defendants also have expropriated important intellectual property of BEA, all for the purpose of unfairly competing with BEA and interfering with its goodwill and economic dealings with third parties.

15. BEA's copyrighted software is called Sophia and protects the United States' energy infrastructure by alerting utility administrators of potential hackers or other threats to the integrity of the nation's energy grid.

16. Given the nature of Sophia, Defendants' actions have implications for our national security. Defendants know of these implications but have ignored them.

17. Defendants are aware that their actions are specifically prohibited by law and by contract and have been and are on notice that BEA has not consented to their actions in any way.

18. By this Complaint, BEA seeks to protect its intellectual property and reputation from intentional copyright infringement and trade secret misappropriation and to protect its business relations and goodwill. BEA files this civil action against Defendants for violations of the Federal Copyright Law, 17 U.S.C. § 101, *et seq*., and related state and common law claims.

## FACTS

19. BEA is the management and operating contractor of the Idaho National Laboratory (the "INL"). The INL is a federal governmental facility owned by the U.S. Department of Energy, Office of Nuclear Energy ("DOE"). DOE is responsible for nuclear and conventional power safety and efficacy.

20. Traditionally, BEA's work at INL included nuclear energy research, development, demonstration, and deployment efforts for nuclear power and research on competitive and sustainable energy systems. A large part of its recent work has been on the unique national and homeland security challenges of power stations and power grids, *i.e.*, protecting the nation's energy infrastructure from cyber-security attacks.

21. BEA has long-term, ongoing research projects at INL but also performs research pursuant to particular federal government funding. In or around 2009, the Department of Energy—Office of Electricity Delivery and Energy Reliability ("DOE-OE") commissioned INL to perform research and development on a software product for enhancing the situational awareness and security of Supervisory Control and Data Acquisition ("SCADA") systems.

22. The software, which came to be known as the Sophia Industrial Control System Computer Network Fingerprinting Tool ("Sophia"), was developed between the years of 2010-2012 by a project team from BEA, working inside of INL.

23. The moniker "Sophia" was chosen as a reference to the Greek goddess of wisdom.

24. The bulk of the research, design, and coding for Sophia was performed by five BEA employees at INL: Jared A. Verba, Kenneth W. Rohde, Gordan H. Rueff, James R. Davidson, and Corey Thuen (the "Developers").

25. The cost to DOE-OE of developing Sophia has been more than $1.5 million.

26. Prior to Sophia, the standard method for detecting suspicious activity in a network was to rely on patterns from previous attacks. Given that attackers are able to change their modes of attack, however, this traditional detection method failed to address new and evolving threats.

27. Sophia was designed to address such threats by utilizing a novel way of approaching cyber security, specifically with respect to SCADA systems: Sophia monitors the infrastructure of a network for a period of time to create a static profile of normal network traffic.

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

From this "normal profile," Sophia is able to detect and alarm network administrators of suspicious or abnormal profile activity.

28. Sophia was designed specifically for use on oil, gas, chemical, and electrical facilities in the United States.

29. The BEA Developers successfully completed Alpha and Beta testing of Sophia in 2012 (in conjunction with more than forty participants in various utility and industry sectors acting as real-world testing environments). The Beta testing revealed significant interest from within the electric utility industry for a commercial version of the software program. The testing also revealed that utilities did not want an "open source" version of the software by which source code would be available to the public. Instead, they wanted a closed-loop proprietary version that was maintained, supported, and distributed by a third party, a commercial software vendor.

30. As a research facility, BEA does not (generally) have the internal capability to commercially distribute its R&D, including Sophia. Accordingly, as Sophia neared completion, BEA sought third-party partners who could act as the closed-loop vendors.

31. BEA instigated a bidding process whereby commercial software and network security firms could compete for the right to exclusively license Sophia. Three separate offerings for bidding occurred in January, April, and July 2012. Eight companies (the "Eight") expressed interest in competing in the bidding process and submitted detailed business plans and proposals to bid on and obtain the commercialization license for Sophia. As part of the RFP process these companies were provided licensed evaluation copies of Sophia for testing and evaluation purposes.

32. Southfork—the company founded by Thuen (one of the Developers) for the purpose of bidding on Sophia—was one of the Eight companies.

33. Southfork represented to BEA that it did not require an evaluation copy of Sophia given that Thuen was one of the original Developers of Sophia.

34. On March 28, 2013, Southfork pitched its business case at the BIG (Business, Innovation, and Growth) Competition in Idaho Falls.

COMPLAINT AND DEMAND FOR JURY TRIAL - 5

35.     Prior to the BIG Competition, some of the Eight bidders expressed concern to BEA that Southfork had an unfair advantage in the bidding process because of its inside knowledge of the design and development of Sophia.  As a result of these concerns, BEA General Counsel, a BEA Security Investigator, and the Sr. Commercialization Manager responsible for the Sophia Licensing Program met with Thuen on March 27, 2013, to discuss the concerns of the other bidders and Thuen agreed to modify his website so as not to give the impression that Southfork already had license rights to Sophia.  Thuen agreed to provide his PowerPoint presentation to BEA General Counsel for review and revision prior to his presentation at the BIG Competition the next day.  While BEA understood that the other bidders were upset at Southfork, from a commercialization perspective, BEA was supportive of Southfork because more competition was inherently beneficial to the bidding.  Thus, the primary purpose of this meeting with Thuen was to preserve the integrity of the bidding process and to prevent the disqualification of Southfork from the competition for the license rights to Sophia.

36.     Ultimately, BEA awarded the right to negotiate an exclusive commercial license to NexDefense, Inc., a Delaware corporation ("NexDefense") on May 7, 2013.  Since license negotiations began, NexDefense has discovered and complained about the conduct of Defendants (as described below) with respect to their unlawful use of Sophia to create and market a competing software program called "Visdom."

## BEA'S PROTECTED RIGHTS

37.     BEA holds proprietary rights to Sophia, including copyrights in the source and executable code, trade secrets, and a pending method patent on the software system (together, the "Protected Work").

38.     On September 16, 2013, BEA filed for registration of the copyright in the literary work underlying Sophia (including the source code, modules, and machine-readable code, the "Copyrighted Work") with the United States Copyright Office.  The Copyrighted Work was created by the Developers under employment agreements and within the scope of their

COMPLAINT AND DEMAND FOR JURY TRIAL - 6

employment with BEA.  Accordingly, BEA has filed for copyright protection as author and owner of Sophia.

39. On May 23, 2012, BEA filed for a patent entitled "Systems, Methods, and Computer Readable Media for Monitoring Communications on a Network," Serial No. 13/478,343 (the "Sophia Method Patent").  The named inventors on the patent are the Developers.  However, pursuant to their employment agreements with BEA, the Developers have each assigned all right and title to the Patent Application to BEA.

40. BEA's trade secrets with respect to Sophia include the proprietary methods for developing and implementing the Sophia system, any business in-confidence economic models, the underlying source code of Sophia, and other business sensitive information and data that it has protected and safeguarded as trade secrets, including by way of legal agreement and data security systems.  These trade secrets are not known to the public.

41. BEA's estimate of the royalties and license fees it expects from the commercialization of Sophia are in the millions of dollars.

## DEFENDANTS' WRONGFUL CONDUCT

42. BEA hired Thuen on or around May 28, 2009.  His employment agreement required him to keep all BEA proprietary information confidential and barred him from using it for personal use or advantage; required him to disclose and assign all innovation arising out of his work for BEA to BEA; acknowledged copyright in all software arising from his employment as belonging to BEA and specifically agreed not to infringe the same.  Thuen signed the employment agreement.  Thuen also received (and signed an acknowledgement in relation to) an Employee Handbook, Standards of Conduct and Business Ethics guide, and a Computer Security guide.

43. Between 2009 and 2012, Thuen worked on the Sophia project and had access to the source code and other intellectual property relating to Sophia.  In November 2011, as BEA was preparing to begin the bidding process for commercial entities to bid on the

commercialization license to Sophia, the Developers (including Thuen) expressed an interest in bidding on the commercialization license via a spin-off company.

44. To identify and mitigate against the obvious conflicts of interest that could arise by the Developers' bidding on Sophia, the Developers and BEA agreed upon and executed a Conflict of Interest ("COI") Plan, wherein the Developers agreed to disclose any conflicts of interest and not use for personal gain any non-public information regarding Sophia derived from their employment at BEA.

45. On May 7, 2012, Thuen filed articles of incorporation for Southfork Security, Inc.

46. On information and belief, on May 29, 2012, Thuen created at least three screen capture animated videos of Sophia ("Demonstration Videos").  Use of the videos was restricted until approval  was issued by BEA's Scientific and Technical Information Management Systems ("STIMS").

47. On May 30, 2012, Thuen submitted a request to STIMS to approve the release the Demonstration Videos.

48. On June 6, 2012, BEA approved Thuen's request for limited distribution. Specifically, BEA limited distribution to commercialization uses for and by BEA personnel and Beta testers.  Thuen was personally informed by a BEA Manager of the limited nature of the Demonstration Videos' distribution.

49. On June 14, 2012, Thuen received an email advising him that his STIMS request was approved.  The email included a recitation of the restrictions and limitations on the distribution of the Demonstration Videos.

50. In June 2012, Thuen uploaded the Demonstration Videos of Sophia, as those approved in his STIMS request, to his www.southforksecurity.com website and to www.youtube.com.

51. The public use and distribution by Thuen of the Demonstration Videos contravened his obligations under the COI and his Employment Agreement, which restricted

COMPLAINT AND DEMAND FOR JURY TRIAL - 8

personal pecuniary use of Sophia material. Thuen's actions also violated the STIMS stipulations.

52. On information and belief, Thuen created the Demonstration Videos by transferring executable code from his work laptop to his home personal desktop where he recorded the video of Sophia in operation, in violation of his agreements with BEA not to remove data or "secured hardware" from INL property.

53. On or about July 5, 2012, the Developers, excepting Thuen, discontinued their plan to join or create an entity for the purpose of bidding on the commercialization license for Sophia. Accordingly, only Thuen remained as an interested party to the bidding process.

54. On August 2, 2012, Thuen executed an addendum to the COI Plan ("Amended COI") which provided that Thuen would be removed from the final work on Sophia, including the final Beta testing. The Amended COI was meant to mitigate and prevent any conflicts of interest between Thuen's Southfork and the other entities that were actively competing and bidding for the Sophia commercialization license. In the Amended COI, Thuen again agreed not to use any non-public information for personal gain.

55. On or around February 22, 2013, Thuen took a voluntary leave of absence in order to devote himself full time to Southfork. Upon taking his leave, Thuen reiterated in writing that he would not use any non-public information acquired while an employee of BEA when working for Southfork. During his leave of absence, Thuen retained his status as an employee, including receiving all non-salary benefits.

56. On or around February 28, 2013, Southfork submitted a licensing proposal to the Technology Deployment Department of INL as a part of the competitive bidding process.

57. On April 18, 2013, Southfork abruptly withdrew from the competitive bidding process. Had Southfork been awarded the commercialization license for Sophia, it would have been required to share royalties and license fees with BEA.

COMPLAINT AND DEMAND FOR JURY TRIAL - 9

58. On or about May 1, 2013, Southfork began advertising a software product called "Visdom," which is, on information and belief, in reference to the Sophia moniker that refers to the Greek goddess of wisdom.

59. On information and belief, Defendants created Visdom by copying elements, architecture, and code from Sophia, in breach of copyright law and Thuen's contractual obligations to BEA.

60. On information and belief, Thuen removed from INL property, an unauthorized copy of Sophia, from which Defendants created Visdom.  Defendants copied Sophia for the purpose of competing with BEA in the market for cyber-security software.

61. On information and belief, Defendants intend to release Visdom as an open-source product, meaning the underlying source code for Sophia will be publicly available to all users.  Stated differently, Visdom will be available to the public copyright-free.

62. On information and belief, Defendants intend to offer Visdom software as an open source product (*i.e.,* license free to the public) and then commercialize or charge a fee to service the software.  Because BEA's business model requires it to license the software, Defendants' actions will destroy BEA's business and substantial investment in the development of Sophia:  BEA will be unable to license a product that is being given away license-free by Southfork.

63. On information and belief, Defendants have breached their contractual and statutory obligations by using BEA's intellectual property for their own gain.

64. On information and belief, Defendants' unauthorized use of BEA's intellectual property was and is intended to scuttle the Sophia Method Patent that is currently pending.

65. On information and belief, Defendants have breached their contractual duties and their other duties (under various tort theories relating to interference with economic relations) by actively seeking out BEA's commercial partners; making affirmative, derogatory comments about the relevant Sophia code; and disclosing BEA's business-in-confidence material, such as pricing models.

COMPLAINT AND DEMAND FOR JURY TRIAL - 10

66.     Notwithstanding BEA's rights in the Protected Work, Defendants are intentionally and willfully using the Protected Work and breaching their contractual obligations and duties of care to BEA.  BEA has never authorized Defendants to disseminate or distribute the Protected Work, nor is this infringement fair use or otherwise defensible.  Defendants' unauthorized actions have damaged and continue to damage BEA and cause irreparable harm that cannot be adequately compensated monetarily.

## PRELIMINARY INJUNCTION FACTORS

67.     BEA will be irreparably harmed by the actions of Defendants, if Defendants are not immediately, preliminarily, and permanently enjoined.

68.     First, BEA is likely to prevail on the merits of each of its claims against Defendants.  Second, BEA can establish clear, immediate, and irreparable harm in the absence of preliminary relief, including loss of its entire Sophia business line and threat to national security.  Third, the balance of equities favors BEA as Defendants' actions have been in bad faith, deliberately violative of legal obligations, and in breach of trust.  And fourth, a preliminary injunction serves the public interest by protecting copyrighted intellectual property of high value, both monetarily and for national security, by helping protect the nation's critical energy infrastructure from cyber attacks.

## FIRST CLAIM FOR RELIEF
### [COPYRIGHT INFRINGEMENT, 17 U.S.C. § 101, *ET SEQ.*]

69.     BEA realleges and incorporates by reference all of the other paragraphs of this Complaint as if set forth in full herein.

70.     The Protected Work consists of wholly original material and is copyrightable subject matter under the copyright laws of the United States.

71.     BEA, its Protected Work, and the business of BEA are known to Defendants. BEA has not licensed or otherwise authorized Defendants to sell and distribute or publicly display any works that are the same or substantially similar to the Protected Work.

72.     Defendants have engaged in the copying, distribution, and display of works bearing infringing copies of the Protected Work.

COMPLAINT AND DEMAND FOR JURY TRIAL - 11

73. BEA is informed and believes, and on that basis alleges, that Defendants intentionally copied, distributed, and displayed infringing copies of the Protected Work with the knowledge of BEA's rights therein in an attempt to target BEA's customers.

74. Defendants have refused to acknowledge BEA's rights in the Protected Work or cease their infringing activities.

75. Defendants are infringing the Protected Work in violation of the Copyright Act, 17 U.S.C. § 101, *et seq.*, by distributing, publicly displaying, offering for sale, and/or selling infringing products, which incorporate copies of the Protected Work.

76. BEA is informed and believes, and on that basis alleges, that Defendants' distribution, display, and sale of these infringing products was deliberate, willful, malicious, oppressive, and without regard to BEA's intellectual property rights.

77. Defendants' copyright infringement has caused, and will continue to cause, BEA to suffer substantial injuries, loss, and damage to its proprietary and exclusive rights to the Copyrighted Work, and has further damaged BEA's business reputation and goodwill, diverted its trade, and caused loss of profits, in an amount to be determined at trial.

78. Defendants' copyright infringement, and the threat of continuing infringement, has caused, and continues to cause, substantial and irreparable damage and injury to BEA.  Thus, BEA is entitled to injunctive and equitable relief against Defendant under 17 U.S.C. § 502, and to an order under 17 U.S.C. § 503 and 28 U.S.C. § 1651(a) that the infringing copies of the Copyrighted Work be seized, impounded, and destroyed.

79. BEA has suffered damages and will suffer damages going forward in lost license fees.  Further, a highly valuable United States critical infrastructure protection tool is being kept from the marketplace by the infringing activity that necessitates this litigation.

80. Defendants are directly, contributorily, and/or vicariously liable for these actions.

## SECOND CLAIM FOR RELIEF
### [MISAPPROPRIATION OF TRADE SECRETS, IDAHO CODE § 48-801, *ET SEQ.*]

81. BEA realleges and incorporates by reference all of the other paragraphs of this Complaint as if set forth in full herein.

82. BEA's Protected Work constitutes trade secrets as defined in Idaho Code § 48-801(5). The Protected Work is licensed by BEA to cyber-security clients and derives its entire economic value from not being generally known to or readily ascertainable by third parties (without improper means). BEA takes all reasonable efforts under the circumstances to protect and maintain the confidentiality of the Protected Work. BEA's disclosure to Defendants occurred only as a function of Thuen's employment, the terms of which required strict confidentiality.

83. BEA is informed and believes, and on that basis alleges, that Defendants misappropriated the Protected Work by improper and unauthorized actions prohibited by Idaho Code § 48-801(2).

84. As a direct and proximate result of Defendants' violation of the Trade Secrets Act, BEA has suffered and will continue to suffer irreparable injury and loss. BEA is entitled to injunctive relief enjoining actual or threatened misappropriation. Idaho Code § 48-802(1).

85. BEA has suffered and continues to suffer monetary damages, including loss of economic opportunities, wasted expenditure, and loss of goodwill. Defendants are otherwise unjustly enriched by their misappropriation. Idaho Code § 48-803(1). BEA is informed and believes, and on that basis alleges, that Defendants misappropriated the Protected Work in a willful and malicious manner, including that Thuen was employed to create elements of the Protected Work and had intimate knowledge of its economic value; and that Thuen was at all times aware of his employer's (BEA's) ownership interest in the Protected Work. Thuen's actions since leaving BEA's employment include threats to release the Protected Work as "open source code," destroying all economic value in the Protected Work.

86. BEA is entitled to injunctive relief and exemplary damages in an amount of twice of actual damages.

COMPLAINT AND DEMAND FOR JURY TRIAL - 13

### THIRD CLAIM FOR RELIEF
### [BREACH OF CONTRACT]

87. BEA realleges and incorporates by reference all of the other paragraphs of this Complaint as if set forth in full herein.

88. BEA and Defendant Thuen entered into a number of agreements including but not limited to Defendant Thuen's Employment Agreement, an Employee Handbook, Standards of Conduct and Business Ethics, a Computer Security Guide, and various Conflict of Interest Plans.

89. Defendant Thuen breached the terms of these agreements through the conduct described throughout this Complaint, including but not limited to his unauthorized dominion and control over BEA's Protected Work and his removal (and/or) retention of records from BEA's computer systems.

90. The breach of these agreements will cause irreparable harm to BEA and will further damage BEA in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
### [TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE]

91. BEA realleges and incorporates by reference all of the other paragraphs of this Complaint as if set forth in full herein.

92. BEA had valid economic expectancies in relationships it has with potential licensees of its Sophia software.

93. As former employees of BEA's, Defendants had knowledge of the profitable relationships and potential contracts between BEA and its potential licensees.

94. Due to Defendants' actions, the relationships and contracts between BEA and its potential licensee are threatened with termination.

95. Defendants took their actions with the improper objective or purpose of harming BEA, and Defendants used wrongful means, including but not limited to the use of BEA's Protected Work, to cause injury to BEA's current and prospective business relationships.

96. BEA has been and will continue to be damaged by such wrongful actions.

97.     As a direct and proximate result of Defendants' tortious interference with BEA's prospective economic advantage, BEA has suffered and will continue to suffer irreparable injury and harm.

98.     By reason of the foregoing, BEA is entitled to injunctive relief and monetary damages against Defendants.

### FIFTH CLAIM FOR RELIEF
### [UNFAIR COMPETITION]

99.     BEA realleges and incorporates by reference all of the other paragraphs of this Complaint as if set forth in full herein.

100.    BEA has invested substantial time, money, and resources in creating and building its software and the attendant commercialization, goodwill, and reputation.

101.    By their actions, Defendants improperly usurped, appropriated, and took advantage of BEA's Protected Work, goodwill, and reputation for the unfair benefit and advantage of themselves.  By their actions, Defendants continue to improperly usurp, appropriate, and take advantage of BEA's Protected Work, goodwill, and reputation for the unfair benefit and advantage of themselves.

102.    In an attempt to further their competitive business efforts, Defendants attempted to undermine and compromise BEA's interests.

103.    Regarding conduct alleged in this Complaint, Defendants acted with malice and/or with intentional disregard of BEA's rights, and Defendants' actions were outrageous.  The conduct of Defendants described in this Complaint constitutes common law unfair competition.

104.    BEA has been and will continue to be damaged by such wrongful actions.

105.    As a direct and proximate result of the acts and course of conduct of Defendants described above, BEA has suffered and will continue to suffer irreparable injury and harm that is incalculable.

106.    By reason of the foregoing, BEA is entitled to injunctive relief and monetary damages against Defendants.

## SIXTH CLAIM FOR RELIEF
### [CONVERSION]

107. BEA realleges and incorporates by reference all of the other paragraphs of this Complaint as if set forth in full herein.

108. On information and belief, Defendants have exercised unauthorized dominion and control over BEA's Protected Work, and have thereby converted BEA's property to their own use.

109. On information and belief, Defendants have, without BEA's prior knowledge or consent, removed (and/or) retained records from BEA's computer system both during their employment (and in breach of agreed computer security), and after the termination of their employment, and used those records to compete with BEA in the same market.

110. BEA has been and will continue to be damaged by such wrongful actions.

111. As a direct and proximate result of Defendants' conversion of BEA's property, BEA has suffered and will continue to suffer irreparable injury and harm that is incalculable.

112. By reason of the foregoing, BEA is entitled to injunctive relief and monetary damages against Defendants.

## SEVENTH CLAIM FOR RELIEF
### [BREACH OF CONTRACT AND IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING]

113. BEA realleges and incorporates by reference all of the other paragraphs of this Complaint as if set forth in full herein.

114. Defendant Thuen's use and exploitation of BEA's Protected Work is in breach of contractual obligations of confidentiality and non-use as set forth in various employment agreements signed by him.

115. Defendant Thuen's conduct in establishing a competing business in BEA's market has breached the covenants of good faith and fair dealing implied in the agreement executed by Thuen.  BEA has been and will be irreparably damaged by such action.

116. By reason of the foregoing, BEA is entitled to injunctive relief and monetary damages against Defendants.

COMPLAINT AND DEMAND FOR JURY TRIAL - 16

## EIGHTH CLAIM FOR RELIEF
### [UNJUST ENRICHMENT, DISGORGEMENT, AND CONSTRUCTIVE TRUST]

117. BEA realleges and incorporates by reference all of the other paragraphs of this Complaint as if set forth in full herein.

118. BEA is informed and believes that Defendants have generated and enjoyed, or will generate and enjoy, profits and other ill-gotten gains as a result of the wrongful conduct alleged above.

119. As a result of the wrongful conduct described herein, BEA has been damaged and subjected to irreparable injury and Defendants have been unjustly enriched.

120. To the extent of Defendants' unjust enrichment, BEA is entitled to disgorgement of all ill-gotten gains and is entitled to the imposition of a constructive trust over all property or money in Defendants' control or possession as a result of its wrongful conduct.

### REQUEST FOR ATTORNEYS' FEES

121. As a result of the conduct by the Defendants as enumerated herein, BEA has been required to retain the services of counsel to assist BEA in pursuing the prosecution of its Complaint against Defendants. BEA is entitled to recover its attorneys' fees in the pursuit of this litigation pursuant to the provisions of relevant Idaho Code and relevant Rule of Procedure in the State of Idaho, including, but not necessarily limited to, Federal Rule of Civil Procedure 54, Idaho Code §§ 12-117, 12-120, 12-121, and such further and additional provisions of the Federal Rules of Civil Procedure and Idaho Code that may be applicable.

### REQUEST FOR JURY TRIAL

122. BEA hereby requests trial by jury, pursuant to Federal Rule of Civil Procedure 38, of all matters set forth in this Complaint that are properly so tried.

### PRAYER FOR RELIEF

WHEREFORE, BEA respectfully prays for judgment against Defendants as follows:

1. Finding that Defendants have infringed BEA's copyrights in the Protected Work in violation of 17 U.S.C. § 501;

2. Requiring Defendants pay damages for their copyright infringement as actual damages in an amount to be determined at trial, together with Defendants' profits derived from their unlawful infringement of the Protected Works;

3. Requiring Defendants pay actual damages in an amount to be determined at trial for Defendants' unjust enrichment;

4. Finding that Defendants have tortiously interfered with prospective economic advantage, unfairly competed with BEA, and converted its property;

5. Requiring Defendants pay damages in tort, including actual, special, punitive, and consequential damages;

6. Finding that Defendants have breached their contracts with BEA and their implied duties of good faith and fair dealing;

7. Requiring Defendants pay damages in contract, including consequential damages;

8. An Order that all infringing products be recalled, seized, impounded, and destroyed;

9. A temporary restraining order requiring Defendants to immediately disable the www.southforksecurity.com website and an immediate *ex parte* order that BEA be permitted to seize Defendants' hard drives and computer equipment and that data therein may be imaged or copied to be held in escrow for the purpose of preserving critical evidence;

10. A preliminary and permanent injunction, enjoining and prohibiting Defendants and any of their officers, directors, employees, agents, subsidiaries, distributors, dealers, and all persons in active concert or participation with any of them from:

   a. Copying, reproducing, duplicating, disseminating, distributing, or using infringing copies of the Protected Work, or any design or work substantially similar to the Protected Work;

   b. Disseminating BEA's intellectual property; and

   c. Requiring Defendants to deliver to BEA for destruction any and all infringing material products embodying unauthorized copying of the Protected Work;

COMPLAINT AND DEMAND FOR JURY TRIAL - 18

11. Requiring Defendants to pay BEA such damages as it has sustained as a consequence of Defendants' wrongful conduct complained of in this Complaint or in an amount to be determined at trial;

12. Requiring Defendants to account for and disgorge all of their ill-gotten gains to the extent of their unjust enrichment as a result of their wrongful conduct complained of in this Complaint, and the imposition of a constructive trust upon any or all property and money that is in Defendants' possession and control as a result of their wrongful conduct complained of in this Complaint;

13. Pre-judgment interest on any amounts awarded at the maximum legal rate as permitted by law and equity; and

14. Any other or further relief that the Court deems appropriate, proper, and just.

DATED this 10th day of October, 2013.

                    HOLLAND & HART LLP

                    By */s/ Scott E. Randolph*
                        Scott E. Randolph, of the firm
                        Attorneys for Battelle Energy Alliance, LLC

6393333_7.DOCX