Bradlee R. Frazer, ISB No. 3857
Jason D. Scott, ISB No. 5615
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.344.6000
Facsimile: 208.954.5262
E-mail: bfrazer@hawleytroxell.com
        jscott@hawleytroxell.com

Attorneys for Defendants Southfork Security, Inc.
and Corey Thuen

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BATTELLE ENERGY ALLIANCE, LLC, a Delaware limited liability company<br><br>　　　　Plaintiff,<br><br>vs.<br><br>SOUTHFORK SECURITY, INC., an Idaho corporation, COREY THUEN, an individual, and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | Case No. 4:13-cv-00442-BLW<br><br>SUPPLEMENTAL RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION FILED ON OCTOBER 10, 2013 |

# TABLE OF CONTENTS

I. "WORK MADE FOR HIRE" ISSUE ................................................................................. 1

II. "NATIONAL SECURITY" ISSUE ..................................................................................... 5

III. CONCLUSION .................................................................................................................... 8

46556.0001.6157815.2

During Wednesday's hearing on Plaintiff Battelle Energy Alliance, LLC's motion for a preliminary injunction, the Court permitted the parties to present supplemental materials on two points: (1) Battelle's new claim, first made during the hearing, that it owns Visdom under "work made for hire" provisions of the employment contract between Battelle and Defendant Corey Thuen; and (2) Battelle's argument that United States national security would be imperiled if Visdom remains publicly accessible on GitHub.com, as it has been since July. To address those issues, Thuen and Defendant Southfork Security, Inc. present this memorandum, along with the accompanying Third Declaration of Corey Thuen.

## I.
## "WORK MADE FOR HIRE" ISSUE

Evidently losing faith in its ability to prove that Visdom is a Sophia copy, Battelle changed tactics during Wednesday's hearing. Without conceding an inability to prove copying, Battelle began arguing that it can prevail in this action without proving that Visdom is a Sophia copy. More particularly, Battelle began arguing that, even if Visdom is not derived from Sophia at all, it belongs to Battelle under "work made for hire" provisions of the employment contract between Battelle and Thuen. The basis for that argument is that Thuen and his co-developer, Kristopher Watts, began developing Visdom in March 2013, while Thuen was technically still a Battelle employee, although he was on a Battelle-approved, one-year professional leave of absence. (Thuen Decl. ¶¶ 12-14, ECF No. 16-1.) Battelle's argument suffers from several flaws.

First, Battelle's complaint does not include any such claim; it contains no assertion that Visdom is Battelle-owned, except perhaps insofar as Visdom is a Sophia copy. Battelle's employment-contract claims (the third and seventh counts of its complaint) are not broad enough to encompass a claim that, because Visdom is a supposed "work made for hire," Thuen breached the employment contract by exercising control over it. Instead, those claims are based on Battelle's original theory that Visdom is a Sophia copy. (Compl. ¶¶ 87-90, 113-16, ECF No. 1.)

RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION - 1

A preliminary injunction cannot be based on the notion that the plaintiff will succeed on a claim that has not been asserted, except in oral comments by its lawyer during the injunction hearing. Indeed, Southfork and Thuen are at some disadvantage in trying to rebut the new "work made for hire" claim, having heard only an oral articulation of it during the hearing two days ago.

Second, Thuen has a valid laches defense to the "work made for hire" claim. The elements of laches are as follows: "(1) defendant's invasion of plaintiff's rights; (2) delay in asserting plaintiff's rights, the plaintiff having had notice and an opportunity to institute a suit; (3) lack of knowledge by the defendant that plaintiff would assert his rights; and (4) injury or prejudice to the defendant in the event relief is accorded to plaintiff or the suit is not held to be barred." *Thomas v. Arkoosh Produce, Inc.*, 48 P.3d 1241, 1248 (Idaho 2002). If the first element is assumed—that Thuen's posting of Visdom to GitHub (or other business use of Visdom) invades Battelle's alleged "work made for hire" ownership of Visdom—the rest of the elements are readily established, given Battelle's admitted longstanding knowledge of Visdom.

Battelle knew about Visdom by May 1, 2013. (Kaczor Decl. ¶ 26, ECF No. 2-4; *see also* Colson Decl. ¶¶ 8, 27-32, ECF No. 2-3.) Until Wednesday, however, Battelle never once claimed ownership of Visdom as a "work made for hire." Between May 1 and Wednesday, approximately 18,000 lines of code were added to Visdom (about 64.2% of its total code base), taking an estimated 350 hours of coding time. (Third Thuen Decl. ¶ 6.) Further, between those dates, Visdom was placed on GitHub.com, identifying Thuen and Southfork—a start-up business—to the world as Visdom's progenitor. (Third Thuen Decl. ¶ 7.) Thuen knew long before he posted Visdom to GitHub that Battelle was aware of the Visdom project, and he had no reason to think Battelle would *wait until over 25,000 lines of code had been written in total, and the market was being developed*, to claim ownership of Visdom on a "work made for hire" theory. (Third Thuen Decl. ¶ 7.) After all, Battelle had fired Thuen in June, during his unpaid

RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION - 2

46556.0001.6157815.2

professional leave, because of Visdom, without proclaiming Visdom a Battelle-owned "work made for hire."  (Thune Decl. ¶ 13, ECF No. 16-1, Third Thuen Decl. ¶ 7.)  Southfork's and Thuen's reputations will sustain immense damage if they must remove Visdom from GitHub because of a court ruling that Battelle is Visdom's likely owner.  (Third Thuen Decl. ¶ 7.)  Battelle's five-month delay in asserting its alleged ownership rights, despite knowing everything it needed to know on May 1 to make its "work made for hire" claim, is inexcusable.  It will cause the loss of Thuen's investment in Visdom, as well as reputational damage.

Third, the provisions of Thuen's employment contract on which Battelle relies were modified by the terms of Thuen's unpaid professional leave from Battelle.  Thuen did not begin work on Visdom until after he began his one-year unpaid professional leave from Battelle to work at Southfork.  (Thuen Decl. ¶¶ 12, 14, ECF No. 16-1.)  The approved purpose of that leave was "formation of a spin-out business that could potentially bid on the public INL call for commercialization of the DOE-OE Sophia product."  (Third Thuen Decl. Ex. A § A.)  Thuen disclosed the following to Battelle in connection with requesting leave for that purpose:  (i) if Southfork bid on Sophia, it would offer Sophia "as one of its products and services" (Third Thuen Decl. Ex. B § 1); (ii) that the purpose of the leave had "the potential to conflict with . . . INL mission or activities" (Third Thuen Decl. Ex. A § B); and (iii) that the purpose of the leave had "the potential to compete with . . . INL business interests."  (Third Thuen Decl. Ex. A § B.)  The leave was approved, despite those disclosures.  (Colson Decl. Ex. I, ECF No. 2-3.)

Fourth, the relevant provisions of the employment contract—sections 7, 9, and 11—do not actually confer upon Battelle ownership of Visdom:

- In section 9, Thuen says he "understand[s] that writings by me, including . . . computer software, . . . which *arise from my employment with BEA*, are the exclusive property of BEA."  (Colson Decl. Ex. A § 9 (emphasis added), ECF No. 2-3.)  But Visdom does not "arise from [Thuen's] employment with BEA"; it was written while he was on professional leave, pursuing his own business interests.

RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION - 3

- Under section 7's broader and more muddled language, Battelle is granted ownership of "Innovations and/or Work for Hire . . . including but not limited to products, processes, methods, systems, designs, computer programs, facilities, equipment, and devices . . . conceived, made, made, or authored by [Thuen] solely or jointly with others during the period of [his] employment," provided that one or more other conditions also are satisfied.  (Colson Decl. Ex. A § 7, ECF No. 2-3.)  This provision is ambiguous.  The capitalized terms "Innovations" and "Works for Hire" are *not* defined anywhere in the contract, despite that it appears from the capitalization, as well as from the "including but not limited to" phrasing, that definitions were intended.  Further, it is not at all clear that the phrase "during the period of my employment" encompasses a period of unpaid professional leave.  *Cf. Mattel, Inc. v. MGA Ent'mt, Inc.*, 616 F.3d 904, 912 (9th Cir. 2010) ("The phrase 'at any time during my employment' is ambiguous.  It could easily refer to the entire calendar period Bryant worked for Mattel, including nights and weekends.  But it can also be read more narrowly to encompass only those inventions created during work hours . . . .").

  Moreover, if section 7 were deemed, despite its ambiguity, to make Battelle the owner of any computer software written by Thuen during his professional leave, then it would conflict with section 9, under which computer software must "arise from [Thuen's] employment with BEA" to be Battelle's property.  That is also a source of ambiguity; internal inconsistencies render a contract ambiguous.  *E.g., Madrid v. Roth*, 10 P.3d 751, 755 (Idaho Ct. App. 2000) ("Paragraph 3(d) is contradictory to and inconsistent with paragraph 7, thus rendering the [contract] ambiguous.").

  Battelle is the drafter, so the ambiguities should be resolved against it.

- Finally, section 11 is not itself an ownership-granting clause, but merely is a limitation on the contract's ownership-granting clauses (sections 7 and 9).  Moreover, section 11 pertains only to "invention[s]"—an undefined term that does not, according to its common meaning, encompass a work of authorship.

Fifth, to the extent Battelle's "work made for hire" claim is based on the Copyright Act, instead of or in addition to Thuen's employment contract, the Copyright Act will not recognize the claim.  It defines a "work made for hire" as "a work prepared by an employee within the scope of his or her employment."  17 U.S.C. § 101.  Visdom may have been partly prepared during a period of time in which an employment relationship technically existed, but Thuen had no employment duties because he was on approved, unpaid professional leave.  Consequently, the preparation of Visdom was not "within the scope of . . . employment" and therefore is not a "work made for hire" under the Copyright Act.  In other words, because Thuen was not acting as

RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION - 4

Battelle's servant under the common law of agency in writing Visdom, it isn't a "work made for hire."  *See Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 741 (1989).

Sixth, Battelle terminated Thuen's employment on or about June 27, 2013.  (Thuen Decl. ¶ 13, ECF No. 16-1.)  Battelle has no claim of ownership to the portions of the Visdom source code that were written after that date.

Seventh, and finally, even if Thuen's work on Visdom prior to Battelle's termination of the employment relationship constitutes a "work made for hire" owned by Battelle, Thuen wrote only the "front end" of Visdom—its user interface.  (Second Thuen Decl. ¶ 2, ECF No. 25.)  Thuen's co-developer, Kristopher Watts, wrote the "back end"—its data collector and analyzer, called "Mimir."  (*Id.*)  These are separate works of authorship, posted separately to GitHub, that together form Visdom.  (Third Thuen Decl. ¶ 5.)  Battelle does not own Mimir, as Watts was not employed by Battelle when he wrote it.  (Thuen Decl. ¶ 21, ECF No. 16-1.)  If the Court for some reason credits Battelle's "work made for hire" argument, the Court nevertheless should confine its ruling to the Thuen-written user interface.

For all of these reasons, Battelle's "work made for hire" argument is of doubtful validity.  This is a "doubtful case[ ]," so a mandatory injunction—an order mandating Visdom's removal from GitHub—is inappropriate.  *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011).

## II.
## "NATIONAL SECURITY" ISSUE

Battelle argues that it has met its burden on the "irreparable harm" and "public interest" factors of the preliminary-injunction test because Visdom's release as an open-source application supposedly threatens the nation's critical energy infrastructure.  (Mem. Supp. Mot. Prelim. Inj. 13-16, ECF No. 2-1.)  Battelle's "national security" argument is properly directed only to the "public interest" factor, as Southfork and Thuen previously explained.  (Response to Mot.

Prelim. Inj. 16, ECF No. 16.)  In any event, the argument depends, first, on the notion that Visdom is a Sophia copy and, second, on the notion that open-source software is inherently more vulnerable to hackers than closed-source software.  The first of those notions lacks any meaningful evidentiary support and simply cannot be credited.  For that reason alone, the "national security" argument doesn't hold water.  The second of those notions has intuitive appeal to non-experts, but it is actually fallacious and lacks evidentiary support to boot.

Perhaps the place to begin is with the low caliber of Battelle's evidence on the supposed unsuitability of the open-source model in the context of security software.  The sole evidentiary support for Battelle's argument that the open-source model amounts to giving away the keys to hackers is found in paragraph 32 of the Declaration of Mark A. Kaczor.  Kaczor, however, is *not* a computer-security expert.  Instead, he is a lawyer who currently works as Battelle's "Commercialization Manager," helping Battelle to market its technologies, and who used to work elsewhere as a nuclear reactor operator.  (Kaczor Decl. ¶ 1, ECF No. 2-4.)  He has literally no relevant expertise, making his testimony inadmissible under Rule 702 and, in any event, worthy of no weight whatsoever.  Testimony by someone with no relevant expertise evidently is the best Battelle could do, despite that it presumably still employs at least some of the Sophia coders other than Thuen (Kaczor Decl. ¶ 8, ECF No. 2-4), who, unlike Kaczor, might have some claim to computer-security expertise.

By Battelle's own admission, Thuen is "an expert in the computer security field." (Colson Decl. ¶ 34, ECF No. 2-3.)  Thuen has testified that the open-source model is widely used today in secure systems, and that it is superior because, unlike the closed-source model, it facilitates scrutiny and improvement by expert programmers.  (Thuen Decl. ¶ 22, ECF No. 16-1.) This is a fuller explanation of his expert view on that subject:

> Visdom is a security application that uses techniques that have existed for quite some time:  whitelisting, network flow

RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION - 6

> analysis, visualization, etc. . . . Security techniques like those used in Visdom work because they are peer reviewed and proven. Any security software that purports to be based on a secret protection technique should be viewed skeptically. My job at Battelle involved helping Battelle's customers improve their closed-source systems by hacking the systems in order to identify weaknesses, without knowing the source code, using methods available to hackers who mean harm. I was always able to find vulnerabilities and gain control of the systems. In the cybersecurity community, the closed-source security model is widely called, pejoratively, "security through obscurity," and it is widely regarded as misguided. The open-source model works better because it is designed to be secure without depending on secrecy. By contrast, the closed-source model depends on secrecy, and secrets often do not remain secret, for one reason or another.

(Third Thuen Decl. ¶ 4.) This refutes Battelle's "giving away the keys" analogy.[1] And, of course, Thuen has already put his money where his mouth is—he would not have spent months developing Visdom as an open-source security application if the open-source model were inherently unsuitable for security applications.

Battelle bears the burden of proof here. Yet Thuen's testimony is the *only* expert testimony in the record on the "national security" issue. The only reliable evidence in the record is that the open-source model is superior, rather than dangerously inferior, at promoting security. Battelle has not met its burden. Its "national security" argument is just a scare tactic.

Indeed, consider the following internal inconsistency in Battelle's presentation. Battelle first contends that the target market demands that Sophia be closed-source. (Kaczor Decl. ¶ 16,

---

[1] In the same vein, renowned computer-security expert Bruce Schneier has written as follows:

> "[Y]ou sometimes hear . . . that secret cryptography is stronger because it is secret, and public algorithms are riskier because they are public. This sounds plausible, until you think about it for a minute. Public algorithms are designed to be secure even though they are public; that's how they're made. So there's no risk in making them public. If an algorithm is only secure if it remains secret, then it will only be secure until someone reverse-engineers and publishes the algorithms.

Bruce Schneier, *Open Source and Security*, Crypto-Gram Newsletter (Sept. 15, 1999), https://www.schneier.com/crypto-gram-9909.html#OpenSourceandSecurity.

RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION - 7

ECF No. 2-4.) Then Battelle contends that the target market will not pay to license Sophia, even though it is closed-source as the target market supposedly demands, because Visdom is available for free, even though it uses the supposedly unsuitable open-source model. (Kaczor Decl. ¶ 31, ECF No. 2-4.) Either the target market demands closed-source software, in which case Sophia's marketability is unaffected by Visdom, or it doesn't, in which case the target market will have demonstrated that it does not share Battelle's concern about the suitability of the open-source model for this purpose. Either way, national security is not even arguably undermined by Visdom's availability on GitHub.com. Visdom's availability can only improve national security, as it provides another security option for vetting in the marketplace.

Finally, it is important to remember that Sophia has yet to be commercialized (*e.g.*, Kaczor Decl. ¶ 30, ECF No. 2-4), and that the Visdom source code cannot be used to "reverse engineer" or gain insight into the Sophia source code. (Thuen Decl. ¶ 20, ECF No. 16-1.) Battelle's "national security" argument is based on the assumption that someday Sophia will be widely adopted (so long as Visdom is eliminated as a competitor), as well as the second assumption that the closed-source Sophia would be more effective than the open-source Visdom. Neither assumption is supported by any evidence. Thus, the supposed "national security" risk at issue is neither imminent nor real. It is a red herring.

### III. CONCLUSION

Battelle's motion for a preliminary injunction should be denied, and the TRO Battelle obtained on an *ex parte* basis should be dissolved.

DATED THIS 25th day of October, 2013.

                              HAWLEY TROXELL ENNIS & HAWLEY LLP

By *Jason D. Scott*
      Jason D. Scott

Attorneys for Defendants Southfork Security, Inc. and Corey Thuen

RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION - 9

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 25th day of October, 2013, I filed the foregoing document electronically through the CM/ECF system which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic filing:

Scott E. Randolph
serandolph@hollandhart.com
A. Dean Bennett
adbennett@hollandhart.com
Mark A. Miller
mmiller@hollandhart.com
Ginger Utley
gutley@hollandhart.com
HOLLAND & HART LLP

*/s/ Jason D. Scott*

Jason D. Scott