Scott E. Randolph (ISB #6768)
A. Dean Bennett (ISB #7735)
HOLLAND & HART LLP
101 South Capitol Boulevard, Suite 1400
P.O. Box 2527
Boise, Idaho 83701-2527
Telephone:  (208) 342-5000
Facsimile:  (208) 343-8869
Email: serandolph@hollandhart.com
       adbennett@hollandhart.com

Mark A. Miller (UT Bar No. 9563) *(admitted pro hac vice)*
Ginger Utley (UT Bar No. 11766) *(admitted pro hac vice)*
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, Utah 84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700
Email: mmiller@hollandhart.com
       gutley@hollandhart.com

Attorneys for Plaintiff
BATTELLE ENERGY ALLIANCE, LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| BATTELLE ENERGY ALLIANCE, LLC, a Delaware limited liability company,<br><br>                    Plaintiff,<br><br>vs.<br><br>SOUTHFORK SECURITY, INC., an Idaho corporation, COREY THUEN, an individual, and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No. 4:13cv00442<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

At the summary judgment hearing on February 12, 2014, the Court granted Plaintiff Battelle Energy Alliance, LLC ("BEA") leave to file this supplemental memorandum in order to present the arguments BEA intended to make at the hearing, but could not given Defendants' failure to appear.  Accordingly, pursuant to the Court's permission, BEA presents this supplemental memorandum in further support of its Motion for Summary Judgment.

## I.   ARGUMENT

### A.   THUEN ACKNOWLEDGED THAT HIS EMPLOYMENT AGREEMENT WOULD CONTINUE TO GOVERN HIS ACTIVITIES IN PURSUING HIS "SPIN-OUT COMPANY"

In 2012, when the idea that the developers of the Sophia program might create a spin-out company to commercialize Sophia was first presented, BEA and the developers, including Defendant Thuen, created a Conflict of Interest Plan ("COI Plan") to outline the general parameters under which they could proceed.  The COI Plan originally anticipated that all 4 Sophia developers would pursue this spin-out company.  *See* Colson Decl. Exhibit E (Dkt. 2-3, pg. 22-24).  An August 2, 2012 addendum to the COI Plan revised the plan to apply solely to Thuen, as the other Sophia developers had determined not to participate.  *Id*. at Exhibit F (Dkt. 2-3, pg. 25-27).  An important aspect of the COI Plan is the express statement that the restrictions set forth to govern the spin-out activity were in addition to Thuen's responsibilities under his employment agreement, which would continue to govern Thuen throughout the process.

> Without limitation on his responsibilities set forth above **or those owed under his at will contract with BEA**, the developer shall not: (1) at any time during the period of his employment at BEA act in a manner or place himself in a circumstance that may impair his ability to impartially act in the best interest of BEA; …

Dkt. 2-3, pg. 23, 27 (emphasis added).  Thuen approved and signed the COI Plan, thereby acknowledging that his employment agreement would continue to govern him as he pursued his "spin out company" Southfork Security.  *Id*. at 24.  There can be no genuine dispute that Thuen was bound by the terms of his employment agreement as he was forming and operating Southfork Security and creating the Visdom program through his termination on June 28, 2013.

B.  **AN INJUNCTION MUST BE SUFFICIENT TO PROTECT BEA'S OWNERSHIP RIGHTS IN VIEW OF DEFENDANTS' NEWLY DISCOVERED INTENT**

A few days prior to the summary judgment hearing, Plaintiff's counsel discovered the following post on Defendants' Google+ social networking page, which reveals an intent to circumvent BEA's ownership and contractual rights even if the Court grants the present Motion.

> …In desperation, BEA changed their tactic and are attempting to claim ownership of some of the code through ridiculous employment contract interpretations.  We aren't worries.  Before this case started we were in the process of doing some refactoring of older code so we're already on the way to replace any code over which they think they have any sort of claim.  Thus, even in a worst case situation where they can somehow persuade a judge/jury to their cause, we should be able to move forward without trouble.
>
> For you technical folks, we've updated the readme on github.  Long story short, we're going to force-push and replace everything there in order to be clean regardless of the case outcome.  We might set up a temporary repository for active development which we'll then push over the top of the official one.

Miller Decl., Exhibit A (attached).

This recent discovery reveals a fundamental problem that, in the event the Court grants BEA's Motion, must be addressed in the language of an injunction.  Simply put, BEA's ownership of Visdom by virtue of the employment agreement is not limited to the program code as it existed on the day Thuen was terminated in June 2014.  Although not a focal point in BEA's Motion, the Court cannot overlook the covenant Thuen made in Section 6 of the employment agreement, which governs Thuen's conduct with respect to BEA's proprietary information during *and after* his employment.

> I shall not, except as authorized in writing by BEA, **at any time during or after my employment** directly or indirectly disclose to any other person or entitiy any proprietary, confidential, private, or sensitive information of the BEA team or of others (collectively called "Proprietary Information") which has come into BEA's or my possession in the course of my employment; **nor shall I use any such Proprietary Information for my personal use or advantage** or make it available to others. …
>
> All information, both technical and non-technical, regarding BEA's business in whatever form, including but not limited to text,

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 2

> drawings, mask works, or **computer programs is presumed to be proprietary and confidential** until it becomes public information lawfully and without breach of (sic.) confidentiality obligation.

Colson Decl. Exhibit A (Dkt. 2-3, pg. 10) (emphasis added).

Thuen's own documents conclusively prove that Thuen used his intimate knowledge of the 3-year Sophia project to create Visdom. *See, e.g.,* Southfork Executive Summary (Dkt. 43-7) ("Visdom was created as a successor to the Sophia project at INL. This project involved three years of development time and lessons learned. We received valuable feedback from customers about their needs and used that knowledge to create the 'next generation' to better solve their problems and protect our nations critical infrastructure."); Thuen Decl. at ¶ 8 (Dkt. 16-1) ("As one of the architects of Sophia, I am familiar with aspects of its architecture, structure, and programming languages. I am intimately familiar with the components that I personally designed…").[1] Any improvements and updates to Visdom after termination of his employment constitute use of BEA's proprietary information (*i.e.*, Visdom) in violation of Section 6. In short, BEA's ownership interest in Visdom is not limited to the lines of code written prior to Thuen's termination, but necessarily extends to all work Thuen performed using his intimate knowledge of Sophia and Visdom, both of which are the proprietary information of BEA. Without his experience and knowledge of the inner-workings of Sophia and Visdom, the industry beta-testing results and feedback for Sophia, the failures, the successes, and the "lessons learned," Thuen would not be able to create his updated Visdom code or any future updates/improvements.

Given Thuen's stated intent to simply replace the original code of Visdom with revised code and continue marketing the product in competition with Sophia, the injunction entered by the Court must be sufficient to protect BEA's proprietary rights under Section 6 of the employment agreement. BEA, therefore, proposes the following revised injunction language to ensure that (a) Thuen and Southfork do not retain possession of or utilize any of BEA's

---

[1] Even if Thuen had elected to terminate his employment in February 2013, rather than take a leave of absence and remain employed, BEA's rights in Visdom would still be established under the terms of Section 6 of the employment agreement, as Thuen admittedly used the proprietary information he acquired as a developer on the 3-year Sophia project at BEA to create Visdom.

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 3

proprietary information relating to Sophia and Visdom in the future and (b) that BEA receives its expected benefits under the employment agreement.

> Defendant Southfork Security, Inc., including all officers, directors, principals, agents, servants, employees, successors and assigns, and all others aiding, abetting, or acting in concert or active participation therewith, and Defendant Corey Thuen are hereby ordered to (1) transfer the Visdom software program and all related source code, including all improvements and updates, to Battelle Energy Alliance ("BEA"); (2) transfer all documents, software, and any other item used in or related to Visdom to BEA; (3) immediately remove Visdom from any public website and refrain from ever publicly displaying or releasing the source code in any manner; and (4) cease using Visdom for any purpose or in any manner.  Defendants shall retain any information relating to Visdom or Sophia and shall so certify in writing.  Given the proprietary information in Defendants' possession concerning the development of Sophia and Visdom by Virtue of Defendant Thuen's role in creating and improving them while employed by BEA, Defendants are prohibited from offering a security software product for SCADA systems for a period of 3 years from the date of this order.

In view of the nature of the claims at issue, any appropriate injunction will necessarily include mandatory aspects (*i.e.*, requiring transfer of Visdom to BEA) as well as prohibitory aspects (*i.e.*, prohibiting future use of proprietary information relating to Sophia and Visdom). The mandatory aspects are necessary to ensure performance of Thuen's obligations under Section 7 of the employment agreement.  *See Empire Ventures, Inc. v. Marshall*, 65 F.3d 174 (Table), 1995 WL 501511 at *5 (9th Cir. 1995) (when property rights are involved, "[s]pecific performance is the usual remedy for breach of contracts[.]"); *Federal Ins. Co. v. Central Diagnostic Laboratory*, 972 F.2d 1338 (Table), 1992 WL 197045 at *3 (9th Cir. 1992) (addressing "claims result[ing] from the breach of the employment contract"; "specific performance and accounting are remedies available for the breach of a contract.").  The prohibitory aspects are necessary to ensure future compliance with Section 6 of the employment agreement.

- 5

In view of all the foregoing, BEA respectfully requests that the Court grant its Motion for Summary Judgment and enter an appropriate permanent injunction that ensures Defendants' compliance with Thuen's employment agreement and protects BEA's contractual rights therein.

DATED this 22nd day of February, 2014.

              HOLLAND & HART LLP

              By */s/ Mark A. Miller*
                  Mark A. Miller
                  Attorneys for Battelle Energy Alliance, LLC

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on the 22nd day of February, 2014, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Lauren E. McConnell | Lauren@BoiseAdvocate.com |
| McConnell Law, PLLC | |
| 512 W. Idaho Street, Suite #103 | |
| Boise, ID  83702 | |
| Telephone:  (208) 287-8663 | |
| Fax:  (208) 545-7537 | |

Attorneys for Defendants
Southfork Security, Inc. and Corey Thuen

            /s/  Mark A. Miller
            for Holland & Hart LLP

6695353_1